UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JALISA SMITH-WARREN,                               Case No. 18-11158
    Plaintiff,

v.

CITY OF STERLING HEIGHTS, and            HON. AVERN COHN
FRANK BARABAS,
    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC.15)

### I.   INTRODUCTION

This is a 42 U.S.C. § 1983 case. Plaintiff, Jalisa Smith-Warren ("Smith-Warren"), is suing Detective Frank Barabas ("Barabas") and the City of Sterling Heights for arresting her without probable cause. The complaint states 10 counts:

    (1) 42 U.S.C. § 1983 - Fourth Amendment violation ("False Arrest"),

    (2) "False Arrest" under state law,

    (3) 42 U.S.C. § 1983 - Malicious Prosecution,

    (4) Malicious Prosecution under state law,

    (5) Equal Protection Clause violation ("Class of One"),

    (6) First Amendment violation – Right to Petition,

    (7) Abuse of Process,

    (8) Civil Conspiracy,

    (9) Constitutional violations, (Failure to train)

    (10) Gross Negligence.

(Doc. 1). Smith-Warren seeks compensation in an amount exceeding $75,000, as well as costs and attorney fees. Now before the Court is Defendant's motion for summary

judgment (Doc. 15). For the reasons that follow, the motion is GRANTED, and this case is DISMISSED.

## II. BACKGROUND

### A. Facts Relating to Plaintiff's Arrest

The parties' motion papers are full of extraneous background information and do not conform to the Court's motion practice guidelines.[1] Nevertheless, the Court gleans from the record the relevant, undisputed facts, which are as follows.

Barabas is a Police Detective employed by the City of Sterling Heights. (Doc. 23, ¶ 3). On January 25, 2016, Barabas was assigned to investigate reports made by Sean and Krysten Lynch ("the Lynchs"). The Lynchs say that they had been receiving threatening and harassing telephone and email messages. (Id., at ¶ 2, 6).

Shortly after Barabas began his investigation, Krysten Lynch contacted Barabas and told him that her husband, Sean Lynch, was having an affair with Smith-Warren. Krysten Lynch also reported that Smith-Warren and her cousin, Diedra Powers ("Powers"), were sending her harassing text messages. (Id., at ¶ 8, 9).

However, Barabas' investigation revealed that some of the harassing text messages were being sent by Sean Lynch, not Smith-Warren, in an effort to hide his

---

[1] On November 15, 2018, Defendants filed a motion for summary judgment without separately filing a numbered statement of material facts. On December 24, 2018, Plaintiff responded to Defendants' motion and separately filed an argumentative statement of facts. On January 11, 2019, Defendants filed a statement of facts, which should have been filed with the motion for summary judgment. Plaintiff responded to Defendants' statement of facts on February 1, 2019. The parties then filed a joint statement of facts on February 12, 2019. However, on February 13, 2019, Defendants filed a "response to Plaintiff's additional material statement of facts." Lastly, on February 19, 2019, the parties filed a document styled "Joint statement of Plaintiff's additional material facts and Defendants' response for Defendants' motion for summary judgment." (Doc. 25). In other words, there are six docket entries labeled "statement of facts."

affair from his wife, Krysten Lynch. (Id., at ¶ 10). After learning that Sean Lynch was sending harassing texts to himself and his wife, Barabas closed the investigation (Case No. 16-3291). (Id., at ¶ 11).

On March 4, 2016, Sean Lynch went back to the Sterling Heights Police Department to report that he was receiving harassing emails. This time, however, the emails were coming from Powers; Smith-Warren's cousin. (Id., at ¶ 12). Once again, Barabas was assigned to investigate Sean Lynch's harassment report. Sean Lynch showed Barabas the harassing emails, which were sent by Powers from diedra0825@gmail.com. (Id. at ¶ 16).

Barabas contacted Smith-Warren and asked her to provide identifying information for her cousin Powers. However, Smith-Warren continuously provided Barabas with inconsistent information regarding the identity of Powers. (Id., at ¶ 18).

Barabas eventually made contact with Power's email account, diedra0825@gmail.com. During an email exchange with Barabas, Powers (diedra0825@gmail.com) admitted to sending harassing emails to Sean Lynch. (Id., at ¶ 21). After Powers admitted to harassing Sean Lynch, Barabas obtained a search warrant for the subscriber information relating to Power's email: diedra0825@gmail.com. (Id., at ¶ 23).

Barabas' search warrant revealed IP addresses relating to the dates and times in which the diedra0825@gmail.com email was opened and accessed. (Id., at ¶ 24). The records showed the IP address 98.243.140.225 was used to access diedra0825@gamil.com during the periods of time that: (1) Fifteen threatening and harassing emails were sent to Sean Lynch, and (2) Four emails were sent to Barabas.

Barabas then obtained a search warrant for the IP address 98.243.140.225, which revealed that Smith-Warren, not Powers, was the subscriber. (Id., at ¶ 26, 27).

After discovering Smith-Warren's connection to the diedra0825@gmail.com account, Barabas sought an arrest warrant. In seeking the warrant, Barbas stated that he had probable cause to believe that "Smith Warren has been portraying to be Diedra Powers and harassing Sean & Krysten Lynch." (Doc. 15-19, p. 4). The arrest warrant charged Smith-Warren with (1) Stalking, and (2) Telecommunication Services – Malicious Use. (Doc. 23, at ¶ 30).

On June 30, 2016, Smith-Warren voluntarily turned herself in to the Sterling Heights Police Department. (Id., at ¶ 31).

On October 19, 2016, the state court charges against Smith-Warren were dismissed due to evidentiary issues. (Doc. 15-20). There were no state court findings of any misconduct by Barabas. (Doc. 23, at ¶ 32).

On April 11, 2018, Smith-Warren filed this case against Barabas alleging federal and state law violations. (Doc. 1). The complaint says Barabas is liable for: unlawful arrest under federal and state law; malicious prosecution under federal and state law; Equal Protection Clause violations; First Amendment right to petition violations; abuse of process; civil conspiracy, and; gross negligence. The complaint also names the City of Sterling Heights as a defendant, alleging Equal Protection Clause violations and constitutional violations (failure to train). Id.

### B. Facts Relating to Plaintiff's Bankruptcy

Defendants say that Smith-Warren is judicially estopped from bringing her claims because she failed to disclose the existence of her claims to a bankruptcy court during

her Chapter 7 bankruptcy. (Doc. 15).[2] Smith-Warren filed for bankruptcy on July 12, 2016. (Doc. 23, ¶ 42). She did not disclose to the bankruptcy court on her schedule of assets that she had any civil claims. (Id., at ¶ 43). Smith-Warren's bankruptcy was discharged on October 18, 2016 and the case was closed on October 21, 2016. (Id., at ¶ 44, 45).

## III.  LEGAL STANDARD

A motion for summary judgment requires the moving party to demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)). In doing so, the Court "must view the evidence in the light most favorable to the non-moving party." Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc., 69 F.3d 98, 101–02 (6th Cir. 1995). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970)).

---

[2] Defendants say that Smith-Warren's claims accrued before her bankruptcy case closed. (Doc. 15).

5

## IV. DISCUSSION

### *A. The City of Sterling Heights*

To hold the City of Sterling Heights liable, Smith-Warren must "prove that 'action pursuant to official municipal policy' caused the[] injury." Connick v. Thompson, 563 U.S. 51, 60 (2011) (quoting Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692 (1978)). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell . . . the existence of the unconstitutional policy, and its origin, must be separately prove[n]." City of Oklahoma City, v. Tuttle, 471 U.S. 808, 823–824 (1985).

A failure-to-train claim has an even higher evidentiary requirement. A failure-to-train claim only arises "[i]n limited circumstances" and "is at its most tenuous where a claim turns on a failure to train." Connick, 563 U.S. at 61 (citing Tuttle, 471 U.S. 822–823)). "To satisfy the statute, a municipality's failure to train its employee in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the untrained employees come into contact.'" Id. (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (2011)).

Here, Smith-Warren's claims regarding municipal liability are confined to the actions of Barabas. (Doc. 18, pg. 31-34). Essentially, Smith-Warren says that she can hold the City liable because Barabas was a tortfeasor, and his shortcomings are attributable to the City's failure to train. However, municipalities cannot be held liable simply because they employ a tortfeasor. See Tuttle, 471 U.S. at 823–824. Because Smith-Warren has not pointed to any policy, practice, procedure, or training that relates

6

to her alleged injuries, she has not established a Monell claim against the City. Thus, the claims against the City are DISMISSED.[3]

### B. Detective Barabas

Most of Smith-Warren's claims rely on a finding that Barabas lacked probable cause to arrest. Counts 1 and 2 allege "false arrest," asserting Barabas lacked probable cause. Also, Counts 3 and 4 allege malicious prosecution on the basis that Barabas arrested Smith-Warren without probable cause. The remaining Counts 5, 6, 7, 8, and 10, relate to Barabas' alleged motives for obtaining the arrest warrant.

When evaluating probable cause, courts do not consider any evidence relating to the subjective intent of an officer. Smith v. Thornburg, 136 F.3d 1070, 1074-75 (6th Cir. 1988). Instead, courts evaluate objective facts and determine whether probable cause exists. Id. If an officer had probable cause to arrest, claims for false arrest and malicious prosecution must fail. See Voyticky v. Vill of Timberlake, 412 F.3d 669, 677 (6th Cir. 2005).

Here, Barabas had probable cause to arrest. Probable cause is the "substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 243 (1983). At the time Barabas requested the arrest warrant, he knew: (1) diedra0825@gmail.com had sent harassing emails to Sean Lynch; (2) the diedra0825@gmail.com email was linked to Smith-Warren's IP address, (3) Smith-Warren's IP address accessed diedra0825@gmail.com many times during the periods in which harassing emails were sent, (4) Smith-Warren provided confusing and misleading information regarding the identity of her cousin Powers; and (5) Smith-

---

[3] At oral argument, Smith-Warren agreed with the Court that her claims against the City should be dismissed.

Warren had a complicated relationship with Sean Lynch that gave her a motive to send such emails. See (Doc. 15-19). Taken together, Barabas had probable cause to believe that Smith-Warren operated the diedra0825@gmail.com email account and was using it to harass the Lynchs under the alias of Diedra Powers.

Smith-Warren also says that Barabas interfered with criminal investigations within other jurisdictions. Smith-Warren supports this claim by pointing to various police reports, from other jurisdictions, of officers communicating with Barabas (or vice versa) during their investigations. However, the police reports involved have overlapping facts concerning the same issues and the same parties—the Lynchs and Smith-Warren. There is nothing unusual about Barabas communicating with officers from other jurisdictions who are dealing with complaints between the Lynchs and Smith-Warren. Further, there is nothing within the police reports that evidences any obstruction or wrongful conduct on behalf of Barabas.

The remaining claims (Counts 5, 6, 7, 8, and 10) are premised on the assertion that Barabas had a preexisting and/or inappropriate relationship with the Lynchs prior to his investigation, which motivated him in pursuing an arrest warrant against Smith-Warren. In support of this claim, Smith-Warren points to:

- Her affidavit, stating that she heard from others that Barabas and Krysten Lynch are either close family friends or sexual partners.

- A police report that was filed by Smith-Warren, which contains her own narrative of Barabas' involvement.

- A text message sent from Sean Lynch's cell phone that states "Benny and Kelly said she having sex with . . . an officer out in sterling heights too so she'll probably try and set you up . . ."

- A text message sent from Krysten Lynch's cell phone that says: "I have a friend whom is a detective at the police department here in sterling heights. As a matter of fact he's my sister and brothers neighbors friend and he's going to help me put

8

you under the jail whether you've done anything or not. We are going to frame the hell out of you and no one will believe it because my friend have the power to do so."

- An email sent between Smith-Warren and the email account of a person named Deedra Chambers that states Barabas is friends with Krysten Lynch.

However, none of these facts, reasonably construed, support a *prima facie* showing of:

an Equal Protection Clause violation;[4] a First Amendment violation;[5] an abuse of

process claim;[6] a civil conspiracy claim,[7] or; gross negligence.[8]

---

[4] "There are [] two elements to a class-of-one theory: (1) the government treated the plaintiff differently from a similarly situated party and (2) the government had no rational basis for doing so." Tuscola Wind III, LLC v. Almer Charter Township, 327 F.Supp.3d 1028, 1032 (E.D. Mich. 2018). Smith-Warren says that Barabas treated her differently from Krysten Lynch. Even assuming Smith-Warren was similarly situated, Barabas had probable cause to arrest, which provides a rational basis for the alleged differing treatment.

[5] A First Amendment claim requires a showing that "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a casual connection between elements one and two–that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." Maben v. Thelen, 887 F.3d 252, 264 (6th Cir. 2018). Even if Smith-Warren's evidence (which is mostly inadmissible) is considered and taken as true, it does not establish a causal connection between a protected activity and Barabas' conduct.

[6] "To recover upon a theory of abuse of process, a plaintiff must plead and prove (1) ulterior purpose and (2) an act in use of process which is improper in the regular prosecution of the proceeding." Sage Intern., Ltd. v. Cadillac Gage Co., 556 F.Supp. 381, 388 (1982). Even if Smith-Warren's evidence of Barabas' prior relationship with the Lynch's (which is mostly inadmissible) is considered and taken as true, it does not establish that Barabas had an ulterior purpose for arresting her.

[7] "A civil conspiracy is a combination of two or more persons, who by some concerted action, agree to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by some unlawful means." Fremont Reorganization Corp. v. Duke, 811 F.Supp.2d 1323, 1341 (2011) (internal quotations omitted). Smith-Warren has not submitted any evidence of an agreement, on behalf of Barabas, to engage in criminal or unlawful conduct.

[8] Smith-Warren's gross negligence claim is premised on Barabas' failure to perform his duties as a police officer. Having determined that Barabas' actions were proper (because he had probable cause to arrest), Smith-Warren's claim for gross negligence fails. See Livermore ex rel Rohm v. Lubelan, 476 F.3d 397, 408 (2007) (quoting MCL § 691.1407(2)(c), which defines "'gross negligence' as 'conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results").

### C. Estoppel Based on Plaintiff's Bankruptcy

Although the Court basis its decision on the substance of Smith-Warren claims, there is also a procedural basis that would lead to summary judgment in favor of Defendants. Without deciding, it appears that even if Smith-Warren could establish a *prima facie* case on any of her claims, she is estopped from suing Barabas or the City of Sterling Heights because the facts that serve as a basis for her claims took place before her bankruptcy case concluded.

The Sixth Circuit has said "that pursuing a cause of action that was not disclosed as an asset in a previous bankruptcy filing creates an inconsistency sufficient to support judicial estoppel." Lewis v. Weyerhaeuser Co., 141 Fed.Appx. 420, 425 (2005). If a party represents to a bankruptcy court that no potential causes of action currently exist, and the bankruptcy court adopts that view, sufficient judicial acceptance has taken place that permits a defendant to later estop the party from advancing an inconsistent position. See Id. (citing Reynolds v. C.I.R., 861 F.2d 469, 473 (1988)). The Sixth Circuit's test for whether estoppel is appropriate is: (1) a plaintiff assumes a position contrary to the one asserted under oath in the bankruptcy proceedings, (2) the bankruptcy court adopted the contrary position, and (3) the omission did not result from mistake or inadvertence. Haddad v. Randall S. Miller Assocs., P.C., 587 Fed.Appx. 959, 965 (6th Cir. 2014). "The failure to disclose a cause of action may be deemed inadvertent where (1) the debtor lacks the knowledge of the factual basis of the undisclosed claims, or (2) the debtor has no motive for concealment." Id. (quoting Browning v. Levy, 283 F.3d 761, 776 (2002)) (internal quotes omitted).

Here, the facts supporting Smith-Warren's claims involve a wrongful arrest by Barabas. Smith-Warren's arrest took place on June 30, 2016. She filed for bankruptcy

10

on July 12, 2016, and the bankruptcy case was not closed until October 21, 2016. Smith-Warren did not tell the bankruptcy court that she had any potential claims against Barabas or the City of Sterling Heights, and the bankruptcy court adopted the position that she did not have any outstanding civil claims.

Smith-Warren says estoppel does not apply because the facts, that serve as the basis for her claims, were not fully developed until after her state court prosecution—based on the alleged wrongful arrest—was closed, which took place on October 19, 2019. Smith-Warren says that because she was discharged on October 18, 2016, and the case was closed on October 21, 2016, there was no duty to disclose her claims to the bankruptcy court, and any failure to do so was an excusable mistake.

However, Smith-Warren does not allege feasance related to *the prosecution* of her arrest. Instead, Smith-Warren's claims relate solely to her arrest and the circumstances leading up to her arrest. Thus, estoppel would be warranted because the factual basis for her claims existed at the time of the bankruptcy proceedings, and Smith-Warren had a financial motive for concealing the existence of her civil claims.

### D. Plaintiff's Request for a Discovery Extension

In her response to the motion for summary judgment, Smith-Warren says that she would be able to prove her claims if given the chance to engage in more discovery. (Doc. 18, p. 35). Smith-Warren did not file a separate motion seeking more discovery.

The doctrine of governmental immunity exists to provide state actors and municipalities an escape from harassing and cumbersome litigation. Ruling on the motion for summary judgment at this time comports with the purposes of qualified immunity and is appropriate because there is no indication in the record that further discovery could lead the Court to a contrary conclusion.

## V. CONCLUSION

Defendants are entitled to summary judgment because: (1) Plaintiff has failed to establish a Monell claim against the City of Sterling Heights, and (2) Plaintiff has failed to make a *prima facie* showing on any of her claims against Detective Barabas.

SO ORDERED.

                                                s/Avern Cohn
                                                AVERN COHN
                                                UNITED STATES DISTRICT JUDGE

Dated: 7/9/2019
Detroit, Michigan